# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued October 8, 2021          Decided May 17, 2022

No. 20-5151

LORI MARINO, PH.D., ET AL.,
APPELLANTS

WHALE AND DOLPHIN CONSERVATION,
APPELLEE

v.

NATIONAL OCEANIC AND ATMOSPHERIC ADMINISTRATION,
ET AL.,
APPELLEES

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:18-cv-02750)

---

*Elizabeth L. Lewis* argued the cause for appellants. With her on the briefs were *Donald Baur* and *William S. Eubanks, II.*

*Sommer H. Engels*, Attorney, U.S. Department of Justice, argued the cause for appellees. With her on the brief were *Andrew C. Mergen* and *Ellen J. Durkee,* Attorneys.

Before: HENDERSON and KATSAS, *Circuit Judges*, and GINSBURG, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* GINSBURG.

GINSBURG, *Senior Circuit Judge*: The plaintiffs are a group of organizations devoted to animal welfare and individuals who work with those organizations and with marine mammals. They sued the National Marine Fisheries Service (NMFS) and its parent agency, the National Oceanic and Atmospheric Administration, seeking to enforce conditions in permits held by SeaWorld, a business operating several marine zoological parks. The permits authorize the capture and display of orcas and require display facilities to transmit medical and necropsy data to the NMFS following the death of an animal displayed under the terms of a permit. The district court dismissed the plaintiffs' suit for lack of standing. We affirm.

## I.     Background

The Marine Mammal Protection Act (MMPA) bans the "taking" of certain classes of marine mammals, including orcas. *See* 16 U.S.C. § 1372. Special Exception Permits are available for the capture of these animals for specified purposes, including research and public display. *Id* at § 1371(a)(1). Although not defined in the statute, public display includes placing marine mammals in facilities such as SeaWorld's marine zoological parks in Orlando and San Diego. *See Jones v. Gordon*, 792 F.2d 821, 823 (9th Cir. 1986) (discussing approval of permits to SeaWorld for public display under this provision of the MMPA). The NMFS determines whether to issue these permits and upon what conditions. *See* 16 U.S.C. § 1374(a), (b). Prior to 1994, the NMFS also

enforced compliance with the conditions in the permits. One condition commonly included in permits issued prior to 1994 required facilities that publicly display marine mammals to send medical history and necropsy data to the NMFS whenever an animal held under the terms of a permit died. These reports were publicly available pursuant to the Freedom of Information Act.

In 1994, the Congress amended the MMPA in such a way that, according to the NMFS, it shifted jurisdiction to oversee the conditions of marine mammals in captivity to the Animal and Plant Health Inspection Service (APHIS) in the U.S. Department of Agriculture; the plaintiffs dispute this interpretation. *See* MMPA Amendments of 1994, Pub. L. No. 103-238, § 5, 108 Stat. 532, 537. Under the NMFS's interpretation of this revised division of labor, the NMFS issues permits and regulates the capture of marine animals, whereas APHIS regulates post-capture. For twenty-three years – until this suit — that understanding went unchallenged.

In 2016, Tilikum, an orca at SeaWorld in Orlando held pursuant to a pre-1994 permit, became ill. He was the subject of a well-known documentary, *Blackfish*, and his illness drew the attention of animal welfare groups, including the plaintiffs. The plaintiffs asked the NMFS whether Tilikum's medical history and necropsy reports would be available upon the orca's death, under the conditions of SeaWorld's permit. On January 6, 2017, as they waited for a response, Tilikum died. The plaintiffs then asked the agency to enforce the permit requirement that SeaWorld transmit medical and necropsy data to the NMFS following his death, but the NMFS declined to do so.

The plaintiffs pressed the NMFS to explain why it would not enforce the permit condition; on March 10, 2017, shortly

before meeting with the plaintiffs, the agency sent an email, explaining that it interpreted the 1994 amendments as extinguishing its authority to enforce marine mammal permits and transferring jurisdiction over marine mammal welfare to APHIS.  In July and August 2017 two more orcas SeaWorld held pursuant to pre-1994 permits died.

The plaintiffs tried to convince the NMFS it had continuing legal authority to enforce pre-1994 permit conditions, but to no avail.  After each orca died, the agency reiterated its position that it did not have the authority to enforce conditions in permits issued to facilities that publicly display marine mammals.  The plaintiffs then brought this suit, arguing that the NMFS's policy rests upon an arbitrary and capricious interpretation of the MMPA, and that its refusal to enforce the permit conditions was also arbitrary and capricious.

The defendants moved to dismiss for lack of subject matter jurisdiction.  The district court granted the motion, ruling that the plaintiffs lacked standing to sue.  We agree.

## II.        Analysis

Plaintiffs argue our precedent supports their standing if, as here, enforcement of a regulation a federal agency declines to enforce would allow them to secure information through the Freedom of Information Act.  The foundational precedent on standing is *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992), which teaches that "standing is an essential and unchanging part of the case-or-controversy requirement of Article III."  To establish standing, a plaintiff "must show (1) an injury in fact that is 'concrete and particularized' and 'actual or imminent'; (2) that the injury is fairly traceable to the defendant's challenged conduct; and (3) that the injury is likely to be redressed by a favorable decision."  *Am. Soc'y For*

5

*Prevention of Cruelty to Animals v. Feld Ent., Inc.*, 659 F.3d 13, 19 (D.C. Cir. 2011) (citing *Lujan*, 504 U.S. at 560-61).

For the plaintiffs to establish their standing to sue, "[e]ach element of standing must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Kareem v. Haspel*, 986 F.3d 859, 865 (D.C. Cir. 2021) (cleaned up). Because the district court granted the NMFS's motion to dismiss, "we accept the well-pleaded factual allegations in the complaint as true and draw all reasonable inferences from those allegations in the plaintiff's favor, but threadbare recitals of the elements of standing, supported by mere conclusory statements, do not suffice." *Id.* at 865-66 (cleaned up). Because the plaintiffs fail to establish that the relief they seek would redress the injury they allegedly suffered, we do not consider whether they satisfy the other requirements for standing.

We explain first that the plaintiffs have failed to allege a favorable decision here would lead the NMFS to enforce the permit conditions and thus redress their alleged injury. Their allegation to the contrary relies upon unadorned speculation that the NMFS would choose to enforce the necropsy permit conditions and that SeaWorld would voluntarily send necropsy information to an agency that had not enforced permit conditions in twenty-three years should this court determine that the NMFS retains its discretion to enforce permits it issued prior to 1994.

## A. First-Party Redressability

To establish redressability, a plaintiff must prove "a likelihood that the requested relief will redress the alleged injury." *Steel Co. v. Cit. for Better Env't*, 523 U.S. 83, 103 (1998). In *Steel Co.* the Court held the plaintiffs did not meet the redressability requirement for standing to bring a claim under the Emergency Planning and Community Right-To-Know Act because they did not allege an ongoing injury that could be remedied by the injunction they had requested. *Id.* at 105-06, 108.

Similarly, here, the plaintiffs did not allege that a favorable decision would cause the NMFS to redress their alleged injuries. Their prayer for relief requests an order declaring the NMFS violated the Administrative Procedure Act and vacating its March 10, 2017 non-enforcement decision and the policy underlying that decision. In the March 10 email conveying that decision, the NMFS said it "will not be enforcing the necropsy-related provisions of the permit." The permit referenced in the email is Number 774, which was issued to SeaWorld in 1992. The "policy" underlying the email is based upon the advice of the agency's counsel that the 1994 amendments to the MMPA shifted the enforcement of permit conditions to the APHIS. The plaintiffs make no allegation addressing the likely effect of a favorable ruling upon the behavior of the NMFS. Even their arguably relevant allegations are oblique at best: They state only that some permit holders continued to submit necropsy reports to the NMFS after 1994 because the agency did not announce until 2017 its position that the 1994 amendments terminated its ability to enforce its permit conditions.

The MMPA is permissive on its face: The NMFS "may" enforce permit conditions; it is not required to do so. *See* 16

U.S.C. § 1374(e)(1) ("The Secretary may modify, suspend, or revoke in whole or in part any permit issued by him under this section."). The plaintiffs cite one provision of the statute that requires the NMFS to act, but it is not helpful to their case because it simply directs the agency, when first issuing a permit, to specify "any other terms or conditions which the Secretary deems appropriate." 16 U.S.C. § 1374(b)(2)(D). Therefore, it is of no moment whether, as the plaintiffs contend, the 1994 amendments to the MMPA did not extinguish the NMFS's ability to enforce its permit conditions, because the NMFS has prosecutorial discretion not to enforce them. Nor do the plaintiffs allege any reason to believe the NMFS would enforce the permit conditions if the plaintiffs received all the relief they requested, namely an injunction requiring the agency to rescind its interpretation of the MMPA or declaratory relief that the agency's interpretation of the statute is unreasonable. Consequently, it seems the plaintiffs' claimed injury is not judicially redressable and they do not have standing to pursue their complaint.

The plaintiffs, however, citing *Competitive Enterprise Institute v. National Highway Traffic Safety Administration* (*CEI*), 901 F.2d 107, 117-118 (D.C. Cir. 1990), argue a plaintiff "need not prove that granting the requested relief is certain to redress their injury." True enough, for certainty is not the lot of man, and no court would require it. In *CEI* the petition alleged that "if [the agency] had adequately assessed the safety impacts of the [relevant] standards, it would have been likely to conclude that its proposed standards were too high." *Id.* at 118. That allegation was all the more plausible because the agency there had "already shown a willingness to entertain comments on the potential effects of a standard lower than 26 mpg, the low end of the range it originally proposed." *Id.*

*CEI* is clearly not controlling here; that redressability is established where a remand would likely result in a favorable exercise of agency discretion does not help the plaintiffs because they did not plausibly plead that relief is indeed likely. *See National Wrestling Coaches Ass'n v. Dep't of Educ.* (*NWCA*), 366 F.3d 930, 938-39 (D.C. Cir. 2004). They did not allege, even on information and belief, that the NMFS was likely to enforce the terms of the permit against SeaWorld or, for that matter, that SeaWorld composed or submitted any reports after 1994.

The plaintiffs also point, quite mistakenly, to *Massachusetts v. EPA*, 549 U.S. 497, 518 (2007), to argue they have standing "if there is some possibility that the requested relief will prompt the injury-causing party to reconsider the decision that allegedly harmed the litigant." Of course, there is some possibility the NMFS would oblige the plaintiffs, but that is not the standard they must meet. As the Court clearly explained in *Massachusetts v. EPA*, immediately after the passage the plaintiffs quote: "It is of considerable relevance that the party seeking review here is a sovereign State and not . . . a private individual." 549 U.S. at 518. "States are not normal litigants for the purposes of invoking federal jurisdiction," and therefore are "entitled to special solicitude in our standing analysis." *Id.* at 518, 520; *see also New Jersey v. EPA*, 989 F.3d 1038, 1045 (D.C. Cir. 2021) (holding New Jersey's quasi-sovereign interests in reducing air pollution justified its standing to challenge an EPA rule). The plaintiffs here are not states and hence are not entitled to special solicitude as to standing. Therefore, the plaintiffs fail to allege any facts from which we could infer the relief they seek would likely cause the NMFS to redress their alleged harms. But wait, there's more!

## B. Third-Party Redressability

The plaintiffs also fail to plead facts suggesting SeaWorld would turn over the necropsy and medical history reports even if the NMFS were so to direct. Indeed, as we have noted before, "[w]hen a plaintiff's asserted injury arises from the Government's regulation of a third party that is not before the court, it becomes 'substantially more difficult' to establish standing." *NCWA*, 366 F.3d at 938 (quoting *Lujan*, 504 U.S. at 562). "Because the necessary elements of causation and redressability in such a case hinge on the independent choices of the regulated third party, 'it becomes the burden of the plaintiff to adduce facts showing that those choices have been or will be made in such manner as to produce causation and permit redressability of injury.'" *Id.* (quoting *Lujan*, 504 U.S. at 562).

Here the plaintiffs' pleadings come close to suggesting a favorable decision would not redress their injury, for they allege that public display facilities have not sent necropsy reports to the NMFS for the past couple of decades. First, the complaint states: "very few public display facilities make such reports available on a voluntary basis." Then the complaint implies SeaWorld did not voluntarily release the necropsy information after the death of Tilikum in January 2017 even though the NMFS had not yet issued its March 10 decision. In other words, the plaintiffs' complaint suggests SeaWorld was not complying with the terms of the permit even before the NMFS issued its decision and is not likely to comply unless forced to do so by the NMFS — which, as we have seen, the plaintiffs did not allege is likely. *See Teton Historic Aviation Foundation v. DOD*, 785 F.3d 719, 726 (D.C. Cir. 2015) ("[A] plaintiff does not have standing to sue when redress for its injury depends entirely on the occurrence of some other, future event made no more likely by its victory in court.").

Finally, citing *Int'l Ladies' Garment Workers' Union v. Donovan* (*ILGWU*), 722 F.2d 795, 811 (D.C. Cir. 1983), the plaintiffs argue there is a "strong presumption" a regulated entity will comply with the law, which they say is all that is required to establish redressability here.  But the *ILGWU* case does not support this proposition; the relief requested there would have made illegal several third parties' subminimum wages, causing a competitive injury to the plaintiffs.  *Id.*  The court held "only by taking extraordinary measures . . . could third parties prevent redress of the appellants' injuries" if the court ruled those subminimum wages were illegal.  *Id.*  In contrast, granting the plaintiffs' requested relief here would not by itself make it unlawful for SeaWorld to refuse to release necropsy data.  Therefore, *ILGWU* is irrelevant to the plaintiffs' cause.

Even if *ILGWU* applied here in principle, it would not help the present plaintiffs because they do not allege SeaWorld ever created and still retains the reports the plaintiffs seek.  The closest they come is to allege that "some public display facilities continued to submit necropsy and clinical history reports" after 1994.  SeaWorld's retention of such reports is particularly unlikely because the relevant regulation requires only that "necropsy records will be maintained at the marine mammal's home facility and at the facility at which it died, if different, for a period of 3 years." 9 C.F.R. § 3.110(g)(2).  Tilikum and the other two orcas referenced in the complaint were all dead by August 15, 2017, more than three years ago.  As a result, we cannot infer SeaWorld would (or could) comply with the permit requirement, even if the NMFS agreed to enforce it.  Therefore, the possible independent choices of a third party, SeaWorld, also defeat the plaintiffs' case for redressability.

### III.    Conclusion

Plaintiffs have not demonstrated their alleged injury is redressable for two reasons: First, they failed plausibly to plead that a favorable decision would lead the NMFS to enforce the necropsy conditions in SeaWorld's permits; second, they did not plead any facts suggesting SeaWorld would, or could, comply with the permit requirement and turn over necropsy data even if the NMFS's interpretation of the MMPA were declared unlawful.  Therefore, the district court did not err in determining that the plaintiffs lacked standing to pursue this case.  The judgment of the district court is, therefore,

*Affirmed*.